Good morning. Kara Hartzler on behalf of Defendant Juan Macias. The affidavit to Mr. Macias's birth certificate that Border Patrol agents created between the first and second trials was inadmissible on no fewer than five grounds. In addition, the prosecutor's comments during closing argument that Mr. Macias forged the birth certificate were not reasonable inferences from the record. Independently and cumulatively, these errors caused Mr. Macias prejudice, and the Court should remand for a new trial. I'd like to begin by talking about the Confrontation Clause. Now, under this Court's case law, there's a three-part test that determines whether there's been a Confrontation Clause violation. First of all, is it testimonial? And that means is it created in anticipation of litigation? In this case, I think there's no question about that. We had a hung jury. Between the first and second trials, there was this affidavit that was created by Border Patrol agents. It doesn't get much more created in anticipation of litigation than that. really good arguments if confrontation is going to be treated as it has been in similar cases involving a birth control, I mean birth, who? Hobby lobby, huh? On the mind. But you know, the very same arguments that you're talking about, I'm wondering whether this is treated the same way. Ordinarily, when you have a birth record, it's done at within a week or 10 days after someone is born, you go and what we have here is what they call a delayed birth certificate. And what happened in this case is this delayed birth certificate didn't issue until the person was already 36 or 38 years old. And it didn't happen until the defendant had already been deported and admitted that he was not an American citizen on various occasions when and when there existed a birth certificate that showed that he was born in Mexico. So isn't the very same argument that you're in a litigation, in a proceeding where this was an issue, isn't that the very same thing that we have when somebody has already been deported because he's not an American citizen, says he's not an American citizen, gets an affidavit from two people, one of whom apparently the record shows can't even write, and when there's testimony from the man's wife that she didn't even live in the United States, the mother didn't even live in the United States of America, why isn't the same idea that this was developed so that it could be used when they, because he constantly is coming here, so that this can't be used to develop and answer a factual question in litigation? And if that's wrong, why is it wrong when the government did it and not wrong when the defendant did it? Because the Confrontation Clause doesn't cut both ways. It only protects the defendant. I would also point out that the exception that allows for the birth certificate that allows for the exception of hearsay has to do with the reliability of these records where there's no motivation to lie, i.e., I hate to get in the political realm, Obama's birth certificate, where these people, the birthers, they come back and they say, years later, he wasn't really born in Hawaii. But you go back, it was done regardless of whether you agree with it or not. You say, well, yeah, I know, but could the parents have anticipated when he was a week old that he was going to run for President of the United States and it was important that he be born in Hawaii? And so you say, no, you look at the records and it establishes there was no motivation, and that's why you have the exception. And here, I don't know whether you have the same factors involved in whether the exception should be involved for a delayed birth certificate that's 38 years later after a guy has been deported and says he's not an American citizen. Two responses, Your Honor. First of all, this Court has already held in Evans the exact question that Your Honor is asking. And that case involved the exact same delayed registration of birth as we have here. And the Court said there that even though the government can't ---- Had the guy already been deported? Had the guy already admitted that he wasn't an American citizen? There was a lot of evidence in the record that he was not a U.S. citizen, as there was here. Had he been deported and said, I'm not an American citizen? I don't know the specifics of that, Your Honor, but it was a delayed registration. by two people to establish a fact, but the government can't do that. Your Honor, the other thing I would also say is in regards to any sort of questions about hearsay, it was the government that submitted this birth certificate, this delayed registration. They submitted it. We didn't. Correct, but the government ---- That's the only thing that you had. But how is the government ---- I understand. How can we go back and do that? I'm being argumentative here. That's all right, Your Honor. I don't know what your point is, but I'm just, I guess I'm sympathetic to the trial court's view of, you know, I had a guy when I was on the Court of Criminal Appeals, I'm sorry, but at that time it was all men. And we'd have a case like this, and his name was White, and I'm sorry for taking your time, but he'd say, what are we doing here, boys? What are we doing here? And I remind, this case reminds me of Justice White. I don't know. I'm sitting here saying, what are we doing here, boys? It just doesn't seem to make a whole lot of sense. Your Honor, I'd also point this Court to its decision in Bustamante. And that was a very, very similar situation where you actually did have a person who had a lot of other evidence that he had been deported. And that was a case where the government, 35 years prior, had gotten a neutral civil registrar to do a similar affidavit. And this Court said, you can't do that. It violates the Confrontation Clause, even if there's all this other evidence in the record. And the reason is because the Court said that the delayed registration of birth goes, or I'm sorry, the birth certificate and this affidavit goes exactly to the heart of the defense. I'll leave you alone. I just have one question. Certainly. Did you make a Confrontation Objection as opposed to a hearsay objection? The word Confrontation Clause was not specifically said below, Your Honor. Now, the government has waived that argument. They actually agreed with us that it was harmless error. The other thing is that I would say that even if the Court says they have to show that it was harmless beyond a reasonable doubt. Yes. And they never raised any sort of plain error argument here. Now, even if the Court says that this is plain error, I think. Isn't it whether something is preserved or not in the standard by which we look, something that belongs to the Court? That the Court could certainly go that way, Your Honor. But if the Court does say this is under plain error, we can still meet that. And I would point to Geston. And that's a very similar case where the Court, there was a hung jury, then there was an error, and in the second trial when there was no or when that error was committed, there was a conviction, and the Court found under a plain error standard that that prejudice had been met. So if the Court said that. I'd like to slightly shift to the harmless error issue, because as I look at this, I'm not clear what difference it makes. The agent or one of the two agents responsible for the second page testifies. The State agent testifies. There's thorough opportunity and exploration of what these pieces of paper mean. What's the difference? Your Honor, I would actually refer to the Court, to the Supreme Court's decision 5 years ago in Melendez-Diaz, where it said that the Confrontation Clause is a procedural protection that imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court. And it declined to create a system in which the prosecution presents its evidence via ex parte affidavits and waits for the defendant to subpoena the affidavits. Scalia. I don't think that's the question. The question is where's the harm here? In other words, are the things, and I was going to ask the opposing counsel to outline it, but maybe you can help me. The things that you're complaining about as being non-testimonial, that there was a birth certificate somewhere else showing that he was in Mexico, that the lady, the witness, wasn't there, all these things. Was there other evidence other than the agents, and we'll say wrongful affidavit admitted here, to show the very same things? There was. But the problem is that what the government actually did here is they took all that evidence and they basically wrapped it in the guise of California State court authenticity. And that's where the harm comes in, because the jury is under this impression that the birth certificate he was relying on is no longer valid under California law. The other thing I would ask is if that's true. I had a witness that said that wasn't true. I had a witness that said this is still, this is still, it doesn't change the Delight birth certificate. Well, the witness's testimony was pretty ambiguous, and the government has certainly argued, and argued to the jury, that it did change it. Now, the thing that I would like to leave this Court with, if I could just save a little bit of time, is it's going to be tempting to say, well, the agent was brought in. First of all, the second agent wasn't brought in. And second of all, even if you look at the fact that one of the agents was brought in, it's still a question not of whether the defendant cured any sort of issue. It's an issue of whether the affidavit affected the outcome of the trial. And that's where we would urge this Court to focus its attention in terms of harmlessness. Thank you. Good morning. Good morning. Charlotte Kaiser on behalf of the United States. Were you the trial counsel? For the first trial, yes, Your Honor. For the first trial. I was, and for the second one, I consulted with them. But the affidavit wasn't introduced in the first trial, was it? That is correct. We had not. We hadn't created it yet. What? We hadn't created it yet. That is correct. It was contemplated in all candor. We hadn't been as creative as the defendant had been. Well, we were basing it on what we had reliable facts. Before the first trial, we didn't have the MEC. In all candor to the Court, before the first trial, we didn't have the MEC's converse certificate. That was the other question when you get through, is what was different between the first trial and the second trial. And that's obviously, I think, a very powerful document, the MEC's converse certificate. And the father's testimony. Given that, why did you why did the agents at your direction go and amend the delayed birth certificate and file a separate piece of paper with their signatures amending it if you had this other new powerful evidence? There are many reasons why. Certainly, in preparation for the second trial, that was part of the reason. We had the MEC's converse certificate. And at that point, I felt comfortable. Let's go ahead and do this. Well, didn't you have jurors telling you that it would have made a difference? There were two jurors I spoke with. One, to me, seemed that she was always sort of on the fence. If it was just her, no problem. The other one, there was a bias there, too. It turned out his mother may have, I hadn't talked to him directly, but his mother had had a delayed registration birth. And he was like, look, it's a birth certificate. It hasn't been amended. And we need to prosecute the State of California for how they have these rules with the delayed registration of birth. The fact of the matter is, though, is that I did not have the Mexican birth certificate. And that really troubled me in the sense of while I certainly believe there was no doubt the defendant was guilty of the crime, in terms of going forward with an affidavit in that respect, I wanted that document in my hand. So based on what you just said, there is no other reason for the amendment's existence other than it was prepared in anticipation of the retrial? No. I said that's one of the reasons. The other reasons are how these delayed registration of births can be used and interpreted. They can be used to support passports. They can be used to get medical benefits. Right, but isn't that a problem that the State of California has created and not a sword for the government to use to prosecute someone? But it's not meant to – I mean, isn't that more of a general political concern as opposed to you wanted to introduce the amendment into trial? So I could possibly have just allowed this document, this fraudulent document  But you think it's fraud. You think it's fraud. But maybe it's not fraud. Maybe the people who signed to it at the time believed it to be true. We don't know exactly. And that's the question for the jury, isn't it? Well, and it's a self-serving document. The lady's affidavit was signed by a lady who supposedly couldn't have been there at birth because the mother, according to the father, wasn't in the United States at that time. Yes. But that's something to be put to the jury, right? We have a lot of good factual arguments here, and that's something the jury should find, right? Yes, but Evans allows – what Evans provided is you can attack the process. This is the process, and we followed the State of California's process. You can certainly attack that. You can. But that doesn't mean that you haven't done so in a manner that violates the Confrontation Clause. Well, I didn't see it that way because I do think – Do you agree that it violates the Confrontation Clause now? I don't. I believe Roth testifying to the document comports with any concerns with the Bustamante because it became a part of the official record, and she explained the process for the amendment. But that said, Your Honor, I do think what's really – But that wasn't one of the affidavits, was it? I'm sorry, sir? Was Roth one of the affidavits, one of the ones that made the amendment? No, she wasn't. So the people that actually provided the affidavits for the amendment didn't testify? No. And neither did the defendant or his mother or the family friend. But there's some constitutional protections that the defendant has that the government doesn't have, right? Well, yes. But basically, this document, it's not a just-accept-one-page, it's an all-or-nothing thing. And that's really going back to what the district court had to decide. It's all-or-nothing. Because the State of California was saying this is the birth record. It's not a one-page document. It's a two-page document. Because the prosecutor had it changed into a two-page document. The State of California had it changed. The prosecutor – That's a request. Well, the – they – Your Honor, that's – it's true. The agents prepared the affidavit. They consulted with us. They consulted with me. And I'm standing here before Your Honor and explaining that. Let me ask you a question. As I understand, maybe I've got a wrong reading of the record. But at the second trial, the lady representing the registrar's office – I don't know what you call them in California. Excuse me. But she also testified at the second trial? She did. Did she not testify that if she would have known about the existence of the first birth certificate, that she would not have issued the initial delayed birth certificate? I'd have to go back to the transcript. That's what she testified in the second trial. And to be perfectly honest, I think – So doesn't that undermine more than what the agents did the validity of the original delayed birth certificate? California has all these processes and rules, and apparently the bad thing is with your agents' motivation according to what the law says. And I understand that. But it's created by the fact that California allows these delayed certificates that come out 38 years later and also allows them to be amended. That's true. And that's the State. It's the State that birthed it. And the evidence I objected to was that if they'd have known about the first birth certificate, they wouldn't have issued the first one. Now why is that not more damning about what the first birth certificate establishes than anything that the agents said? Your Honor, I believe it is damning. I believe a lot of the testimony that she had to say when confronted, and essentially I think where we can fall back on here is this issue of harmless error. There is – it is a harmless error issue. If Your Honors have concerns about confrontation – This is a harmless issue because the case law, whether I agree with it or not, has suggested that this was the wrong thing to do. I'm sorry. The case law suggested that this was the wrong thing to do and this was confrontation unless you make some kind of an exception for what happened here. I mean, it's screening for it, but I don't know whether this Court can do that. Well, but then again, I do think when you look at the delayed registration of birth, and I know how the confrontation says against confrontation, but this delayed registration birth is a very self-serving document. It either all comes in or it doesn't. It's a two-page document. So – But it wasn't. You made it a two-page document. That's the problem. I did not make it, Your Honor. Well, your agents did. No, Your Honor. The State of California did. With all due respect, it was the State of California. We don't tell the State of California what to do. Why did the document come in as part of the government's case-in-chief? Because if defense then introduced it, defense would have introduced it anyway. So the bottom line is, is at that point, it was a strategic decision. If they're going to try and introduce it, it comes in as two – it comes in as two pages. Did the district court pass on the question of – I mean, I suspect the defense would have sought to introduce a one-page document. Did the district court ever deal with that question? The district court, I believe, had a sidebar at some point where they said – where the judge had indicated that she would allow – there was one that was file-stamped, I believe, in October to come in, because at that time, it was a one-page document. And that's what happened in the first trial. And that's what happened. So did the district court say, okay, by the time of the second trial, it's either two pages or nothing? No. The sidebar had indicated the – she did say for – it's a two-page document, but she did allow them to introduce the October document to show that at that time it was a one-page document, but then it had been amended to become a two-page document. Kennedy, you're suggesting it was introduced in the government's case in chief because it was going to be introduced anyway. I suspect the defendant would not have sought to introduce a two-page document, would have sought to introduce a one-page document. Do we know that the district court would have said no to that? No, we do not. Actually, no, the district court would have said no because she said it's a two-page document. What I can understand is why you introduced it in the first place. If it was objected to, you could have waited until they tried to introduce their portion and say, well, that's not the whole document. That's not the whole record. It would have come in anyway, either way. I think, again, and I see – I'm sorry. I think my time has run out, Your Honor. But, again, I think this is really – if Your Honors have concern about it, it's a harmless error issue. And I want to thank you very much for your time. All right. Thank you very much. Your minute. Two brief points. Going to the harmless error issue and the Mexican birth certificate that the government presented, I just want to remind the Court that this was an uncertified, unapostilled document in which the government's own fingerprint experts said that the fingerprints were inconclusive. But you got the father of the man saying that's his signature, that he wasn't, that the kid was born in Mexico, that none of his children were born in the United States, that his wife never lived in America during the relevant time period, that his wife couldn't read or write. But the father also testified in the first hearing, in the first trial. That's right. That's what they used. They used the father. And so if two jurors – if it was hung in the first trial when the father testified – That doesn't make any difference because a jury can let somebody free with overwhelming evidence. So this idea of what happened in the first trial, there's – it's either harmless because of what happened in the second trial or it's not harmless and the first trial is relevant. I would disagree in that I think under Gaston, plain error, even under a plain error standard, that's – the Court can look at the fact that it hung in the first trial and didn't hang in the second. We can look at it, but there's also case law that says that because a jury can acquit even on overwhelming evidence, then you don't have to consider it. The second point that I would say is that my opposing counsel's statement is that basically either the whole birth certificate comes in or nothing comes in. And that goes to the question of whether California considers this to be the birth certificate or not. It's not relevant what California thinks. What's relevant is, is this an admissible document in Federal court? And page 2 was not. And we also believe that – Let's come back. Would you have – suppose the district judge had told you it's a two-page document. Either you can introduce the document or you cannot introduce the document. Would the defense have introduced the document? I think it's hard to say. I think we probably wouldn't. Well, what evidence would you have that he wasn't an American – that he was an American citizen without the document? What would you have done? Well, Your Honor, first of all, I think we're shifting the burden. It's the burdens on the government. No, no, no. This is a practical matter. Don't play games with me, counsel. I've done this for a long time. And you have, too. You're experienced. What evidence would you have had to suggest that he was an American citizen if you didn't have a California document, a delayed birth certificate, claiming that he was born in California? It's possible that we could have had the defendant testify and say what his mother told him. And then there would be, you know, certainly issues of identity and civility about that. But we could have presented that. Thank you, Your Honor. Thank you, counsel. U.S. v. Macias is submitted.
judges: Benavides, WARDLAW, CLIFTON